**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3569-23

JOSEPH M. KEHOE,

     Plaintiff-Appellant,

v.

PSE&G,

     Defendant-Respondent.

_____

Submitted February 24, 2026 – Decided August 3, 2026

Before Judges DeAlmeida and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. DC-012506-23.

Joseph M. Kehoe, self-represented appellant.

PSEG Services Corporation, attorneys for respondent (Anthony J. Corino, of counsel and on the brief).

PER CURIAM

    Plaintiff Joseph M. Kehoe appeals from three Law Division orders: (1) the April 1, 2024 order dismissing his amended complaint against defendant

Public Service Electric and Gas Company, improperly pled as PSE&G, pursuant to Rule 4:6-2(e), without prejudice for failure to state a claim upon which relief can be granted, and dismissing as moot his motion for reconsideration of a prior order, and his motion to hold defendant in contempt; (2) the May 31, 2024 order denying his motion for reconsideration of the April 1, 2024 order; and (3) the May 31, 2024 order dismissing his amended complaint pursuant to Rule 4:6-2(e), with prejudice for failure to state a claim upon which relief can be granted. We affirm the orders, except for the provision in the May 31, 2024 order dismissing the amended complaint with prejudice. We remand for entry of an order dismissing the amended complaint without prejudice to refiling after plaintiff exhausts his administrative remedies before the Board of Public Utilities (BPU).

I.

Plaintiff owned residential property in New Brunswick. Defendant was a public utility that provided gas service to the property.

On June 20, 2023, defendant shut off gas service to plaintiff's property to install a new meter on the exterior of the residence. Defendant did not restore gas service after installation of the new equipment.

2

On July 25, 2023, plaintiff noticed gas service at the property was disconnected. He contacted defendant to request gas service be restored.

On July 26, 2023, and October 19, 2023, defendant's technicians attempted to restore gas service to plaintiff's property. On each occasion, plaintiff refused to permit the technicians to enter his residence. He believed entry into the residence was unnecessary because the gas meter was on the exterior of the home. According to defendant, for safety reasons, its technicians could not restore gas service without access to the residence because they must ensure appliances are safely reconnected to the gas supply, relight pilot lights, and perform a dial test.

In addition, according to defendant, while its technicians were at plaintiff's property, they noticed old gas piping on the front porch of the residence. The piping raised suspicion plaintiff had undertaken renovations and replaced gas piping in the home. According to defendant, before gas service could be restored it was necessary for its technicians to enter the home to determine if renovations had taken place and, if so, whether the new gas piping required testing by a licensed plumber and inspection by the municipal building inspector. Because plaintiff refused to permit the technicians to enter the property, gas service was not restored.

A-3569-23

On November 15, 2023, plaintiff filed a complaint and order to show cause in the Special Civil Part. He alleged: (1) defendant had a duty, pursuant to N.J.A.C. 14:3-3.1(a), to provide him with gas service; (2) access to the interior of his home by defendant's technicians was not required to restore gas service to the property; and (3) defendant willfully and maliciously refused to provide plaintiff gas service. Plaintiff sought $20,000 in compensatory and punitive damages, as well as injunctive relief requiring defendant to restore gas service to his property.

On December 15, 2023, the court issued an order to show cause granting preliminary injunctive relief directing defendant to "[r]estore [p]laintiff's gas service forthwith" and setting the matter for a hearing on December 21, 2023.

On December 21, 2023, the court held a hearing with only plaintiff in attendance. The court stated its attempts to serve the complaint and order to show cause on defendant were unsuccessful. After an exchange with plaintiff, the court entered an order providing: "PSE&G is ORDERED forthwith to restore [p]laintiff['s] . . . gas service . . . ."

Also on December 21, 2023, without knowledge of the court's orders, defendant's technicians again attempted to restore gas service to plaintiff's

4

property. Plaintiff again refused to permit the technicians to enter the residence. As a result, gas service was not restored to the property.

On January 14, 2024, plaintiff filed an amended complaint in the Law Division. In addition to describing the three failed attempts to restore gas service at the property, plaintiff alleged defendant charged him a monthly fee for gas service, despite gas service having not been restored for more than six months. Plaintiff alleged: (1) breach of statutory duty; (2) negligent misrepresentation; (3) fraudulent misrepresentation; (4) breach of contract; (5) "intentional breach of contract[;]" (6) "continuing intentional breach of contract[;]" (7) fraud; (8) negligent infliction of emotional distress; and (9) intentional infliction of emotional distress. In addition to injunctive relief, plaintiff sought $50,000 in compensatory damages and $250,000 in punitive damages.

On January 16, 2024, plaintiff filed a motion to enforce litigant's rights seeking to enforce the December 21, 2023 order. Defendant opposed the motion and cross-moved to vacate the December 21, 2023 order.

On February 14, 2024, defendant moved, pursuant to Rule 4:6-2(e), to dismiss the amended complaint for failure to state a claim upon which relief can be granted. Plaintiff opposed the motion.

A-3569-23

On March 8, 2024, the court issued a written decision granting in part plaintiff's motion to enforce litigant's rights. The court found the defendant's tariff with the BPU contains numerous terms and conditions detailing defendant's authority to ensure gas service is supplied in a safe manner. The court noted Section 10 of the tariff provides defendant:

> shall have the right of reasonable and safe access to customer's premises, and to all property furnished by [defendant], at all reasonable times for the purposes of inspection of customer's premises incident to the rendering of service, reading meters or inspecting, testing, or repairing its facilities used in connection with supplying the service, or for the removal of its property.

The court also examined three BPU regulations. First, the court considered N.J.A.C. 14:3-3A.1(a)(1), which provides, "The utility shall have the right to suspend or curtail or discontinue service . . . [f]or the purpose of making permanent or temporary repairs, changes or improvements in any part of its system." Second, the court reviewed N.J.A.C. 14:3-3A.1(a)(5)(i), which authorizes defendant "to suspend or curtail or discontinue service . . . [f]or . . . acts or omissions on the part of the customer[,]" including "[r]efusal of reasonable access to the customer's premises in accordance with N.J.A.C. 14:3-3.6." Third, the court considered N.J.A.C. 14:3-3.6(a), which provides:

The utility or its designated contractor shall have the right of reasonable access to the customer's premises, and to all property on the customer's premises, which is furnished by the utility, at all reasonable times for the purpose of inspection of customer's premises incident to the rendering of service including reading meters; [or] inspecting, testing, [and] repairing, . . . of its facilities used in connection with supplying the service . . . .

The court concluded plaintiff was entitled to restoration of gas service and defendant was authorized to enter plaintiff's residence to ensure gas service was restored safely. The court issued a March 8, 2024 order directing defendant: (1) shall contact plaintiff to arrange for a date and time to restore plaintiff's gas service at plaintiff's property; and (2) "shall be permitted to access only the areas of the premises, exterior or interior, that are necessary to safely restore service and only for the time necessary to do so."

On a date not specified in the record, plaintiff moved to: (1) "enter judgment," which the court treated as a motion to hold defendant in contempt for evading service of the December 21, 2023 order; and (2) exclude from the record part of the certification defendant submitted in support of its motion to vacate the December 21, 2023 order, which the court treated as a motion for reconsideration of the March 8, 2024 order.

7

On April 1, 2024, the court issued a written decision dismissing the amended complaint pursuant to Rule 4:6-2(e) without prejudice to plaintiff filing a petition with the BPU to interpret defendant's tariff and the agency's regulations. The court concluded under N.J.S.A. 48:2-13(d), the BPU has primary jurisdiction over "all services necessary for the transmission and distribution of . . . gas, including but not limited to safety, reliability, [and] metering . . . ." The court determined plaintiff's tort and breach of contract claims, as well as his primary argument with respect to whether defendant is authorized to enter his residence to restore gas service, are "based on the safe restoration of gas and the corresponding issues, which fall squarely within" the BPU's primary jurisdiction. In addition, the court found plaintiff failed to exhaust available administrative remedies prior to seeking judicial relief by not seeking a determination from the BPU with respect to defendant's right of access to his home. The court rejected plaintiff's argument exhaustion of administrative remedies would be futile because he sought monetary damages, had suffered irreparable injury, and stated claims requiring interpretation of statutes.

The court also determined defendant's motion to vacate the December 21, 2023 order, plaintiff's motion to hold defendant in contempt, and plaintiff's motion to exclude a portion of defendant's certification were moot, given its

A-3569-23

decision to dismiss the amended complaint to permit plaintiff to pursue administrative relief before the BPU. An April 1, 2024 order memorialized the court's decision dismissing the amended complaint without prejudice.

On May 16, 2024, plaintiff moved for reconsideration of the April 1, 2024 order. He argued he exhausted his administrative remedies by attempting to file a petition with the BPU on January 29, 2024, and February 23, 2024. He claimed the agency rejected his petitions. In support of his motion, plaintiff submitted what appeared to be a printout from the website of the customer assistance division of the BPU, which contained hearsay statements of BPU employees about an informal complaint the agency received from plaintiff. Defendant cross-moved to dismiss the amended complaint with prejudice, arguing an absence of jurisdiction in the Law Division warrants that relief.

On May 31, 2024, the court issued a written decision denying plaintiff's motion. The court found the documents submitted by plaintiff were insufficient to establish he exhausted administrative remedies before the BPU. In addition, the court summarily concluded dismissal of the amended complaint with prejudice was warranted.

 A-3569-23

On May 31, 2024, the court entered an order denying plaintiff's motion for reconsideration of the April 1, 2024 order[1] and a separate order granting defendant's motion to dismiss the amended complaint with prejudice. This appeal followed.

Plaintiff argues the motion court erroneously dismissed his amended complaint with prejudice because: (1) he exhausted his administrative remedies at the BPU prior to dismissal of the amended complaint; (2) his claims for monetary damages are outside the jurisdiction of the BPU; (3) the amended complaint raised questions of law and statutory interpretation outside the agency's expertise; (4) further attempts at exhausting administrative remedies would be futile; (5) he suffered irreparable harm; and (6) in the alternative, the court should have dismissed his claims without prejudice.[2]

---

[1] The order indicates plaintiff moved for reconsideration, but states "[d]efendant's motion is hereby DENIED . . . ." This appears to be a typographical error.

[2] Plaintiff also argues the court made a procedural error in not docketing his amended complaint. This argument is based on a deficiency notice plaintiff received from the court advising him to file a motion for leave to amend his complaint. Plaintiff notes defendant addressed the amended complaint in its motion to dismiss and states he raised the argument "only should it be relevant in [d]efendant's answer." Defendant did not raise the issue in its brief, and the record establishes the motion court considered the amended complaint before granting the motion to dismiss. We, therefore, need not address plaintiff's argument.

A-3569-23

## II.

We apply a de novo standard of review to a trial court's order dismissing claims under Rule 4:6-2(e). See Stop & Shop Supermarket Co. v. Cnty. of Bergen, 450 N.J. Super. 286, 290 (App. Div. 2017) (quoting Teamsters Loc. 97 v. State, 434 N.J. Super. 393, 413 (App. Div. 2014)). Under the rule, we owe no deference to the motion judge's conclusions. Rezem Fam. Assocs. v. Borough of Millstone, 423 N.J. Super. 103, 114 (App. Div. 2011).

Our "inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (citing Rieder v. Dep't of Transp., 221 N.J. Super. 547, 552 (App. Div. 1987)). However, "[t]he complaint must be searched thoroughly 'and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary.'" Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021) (quoting Printing Mart, 116 N.J. at 746). "A pleading should be dismissed if it states no basis for relief and discovery would not provide one." Rezem Fam. Assocs., 423 N.J. Super. at 113 (citing Camden Cnty. Energy Recovery Assoc. v. N.J. Dep't of Env't Prot., 320 N.J. Super. 59, 64 (App. Div. 1999), aff'd, 170 N.J. 246 (2001)).

"The Superior Court shall have original general jurisdiction throughout the State in all causes." N.J. Const. art. VI, § 3, ¶ 2. At the same time, "[e]ach administrative agency is vested with authority to adjudicate legal rights and duties of specific parties arising under the rules and regulations promulgated by the agency." D.G. ex rel. J.G. v. N. Plainfield Bd. of Educ., 400 N.J. Super. 1, 16 (App. Div. 2008).

When a party raises a claim in the Law Division predicated entirely or in part on an issue within an administrative agency's statutory authority, the court may decline to exercise its jurisdiction on two grounds: (1) failure to exhaust administrative remedies; or (2) the doctrine of primary jurisdiction.

> When the claim itself falls within the agency's exclusive jurisdiction, it is subject to dismissal because of the failure to exhaust administrative remedies. But, when a court has jurisdiction over the claim and a pivotal aspect presents a question falling within an agency's expertise, a court will retain jurisdiction, stay the action, and allow for the agency's determination of that aspect.
>
> [Est. of Burns v. Care One at Stanwick, LLC, 468 N.J. Super. 306, 322-23 (App. Div. 2021).]

"The obligation to exhaust 'administrative remedies before resort to the courts is a firmly embedded judicial principle.'" Ortiz v. N.J. Dep't of Corr., 406 N.J. Super. 63, 69 (App. Div. 2009) (quoting Garrow v. Elizabeth Gen. Hosp. &

Dispensary, 79 N.J. 549, 559 (1979)). The exhaustion doctrine "is a rule of practice designed to allow administrative bodies to perform their statutory functions in an orderly manner without preliminary interference from the courts." Brunetti v. Borough of New Milford, 68 N.J. 576, 588 (1975). As the Supreme Court explained:

> We have recently noted that the doctrine of exhaustion of administrative remedies serves three primary goals: (1) the rule ensures that claims will be heard, as a preliminary matter, by a body possessing expertise in the area; (2) administrative exhaustion allows the parties to create a factual record necessary for meaningful appellate review; and (3) the agency decision may satisfy the parties and thus obviate resort to the courts.
>
> [City of Atl. City v. Laezza, 80 N.J. 255, 265 (1979).]

On the other hand, "[t]he doctrine of primary jurisdiction is applicable when a case is properly filed in the Superior Court but the court declines original jurisdiction, referring specific issues to the appropriate administrative body." Est. of Kotsovska v. Liebman, 221 N.J. 568, 588 (2015) (quoting Magic Petroleum Corp. v. Exxon Mobil Corp., 218 N.J. 390, 405 (2014)). "Thus, 'when enforcement of a claim requires resolution of an issue within the special competence of an administrative agency, a court may defer to a decision of that agency.'" Ibid. (quoting Campione v. Adamar, Inc., 155 N.J. 245, 263-64

13

(1998)).  A court may "defer to the jurisdiction of an administrative agency . . . for 'the resolution of threshold issues, usually of a factual nature, which are placed within the special competence of the administrative body.'"  Unalachtigo Band of the Nanticoke-Lenni Lenape Nation v. State, 375 N.J. Super 330, 345 (App. Div. 2005) (quoting Golden Hill Paugussett Tribe of Indians v. Weicker, 39 F.3d 51, 58-59 (2d Cir. 1994)).

Judicial deferral to an administrative agency serves two purposes:  (1) "to allow an agency to apply its expertise to questions which require interpretation of its regulations[;]" and (2) "to preserve uniformity in the interpretation and application of an agency's regulations."  Borough of Haledon v. Borough of N. Haledon, 358 N.J. Super. 289, 302 (App. Div. 2003).  A court should defer to an agency's primary jurisdiction if "'to deny the agency's power to resolve the issues in question' would be inconsistent with the 'statutory scheme' which vested the agency 'with the authority to regulate [the] industry or activity' it oversees."  Muise v. GPU, Inc., 332 N.J. Super. 140, 160 (App. Div. 2000) (alteration in original) (quoting United States ex rel. Haskins v. Omega Inst., Inc., 11 F. Supp. 2d 555, 561 (D.N.J. 1998)).

"Although no formula exists to evaluate the applicability of primary jurisdiction, . . . our courts have been guided by a four-part test . . . ."  Kotsovska,

221 N.J. at 588 (quoting Magic Petroleum, 218 N.J. at 407). The factors to be considered are:

> 1) whether the matter at issue is within the conventional experience of judges; 2) whether the matter is peculiarly within the agency's discretion, or requires agency expertise; 3) whether inconsistent rulings might pose a danger of disrupting the statutory scheme; and 4) whether prior application has been made to the agency.
>
> [Ibid. (quoting Magic Petroleum, 218 N.J. at 407).]

A court's dismissal of a claim for failure to exhaust administrative remedies will be affirmed absent an abuse of discretion. Indep. Realty Co. v. Twp. of N. Bergen, 376 N.J. Super. 295, 303 (App. Div. 2005). We also review a court's application of the primary jurisdiction doctrine under an abuse of discretion standard. Kotsovska, 221 N.J. at 588.

Having reviewed the record in light of these legal principles, we find no basis on which to reverse the dismissal of the amended complaint either for failure to exhaust administrative remedies or under the primary jurisdiction doctrine.

"The Legislature has endowed the BPU with broad power to regulate public utilities . . . . [and] considerable discretion in exercising those powers." In re Pub. Serv. Elec. & Gas Co.'s Rate Unbundling, 167 N.J. 377, 384-85 (2001)

(alterations in original) (quoting In re Elizabethtown Water Co., 107 N.J. 440, 449-50 (1987)). The BPU "shall have general supervision and regulation of and jurisdiction and control over all public utilities . . . and their property, property rights, equipment, facilities and franchises so far as may be necessary for the purpose of carrying out" its statutory authority. N.J.S.A. 48:2-13(a). The BPU's authority includes regulation of "all services necessary for the transmission and distribution of . . . gas, including but not limited to safety, reliability [and] metering . . . ." N.J.S.A. 48:2-13(d).

To effectuate its authority, BPU issued a tariff to defendant to provide gas service to customers in its service area. As noted above, the tariff provides defendant

> shall have the right of reasonable and safe access <u>to customer's premises</u>, and to all property furnished by [defendant], at all reasonable times <u>for the purposes of inspection of customer's premises incident to the rendering of service,</u> reading meters or inspecting, testing, or repairing its facilities used in connection with supplying the service, or for the removal of property.
>
> [(Emphasis added).]

In addition, the BPU adopted regulations permitting the suspension or curtailment of services for a customer's "[r]efusal of reasonable access to the

customer's premises" for the purpose of supplying services. See N.J.A.C. 14:3-3A.1(a)(5)(i) and :3-3.6.

Each claim alleged in the amended complaint is based on plaintiff's argument reasonable access under defendant's tariff and the BPU's regulations does not include the authority for defendant's technicians to enter his home for safety purposes when restoring gas service. The BPU has the statutory authority and expertise to interpret defendant's tariff and its regulations to determine if defendant is authorized to enter plaintiff's residence to ensure the safe restoration of gas service. The regulation of the safe provision of utility services is squarely within the agency's expertise, and statutory authority. The agency certainly has greater familiarity with the intricacies of providing safe restoration of the flow of a flammable gas to residences than does the court. In addition, the consistent interpretation and application of BPU's regulations by the agency will bolster safety and ensure uniform compliance with residential gas restoration practices in the State. The motion court, therefore, acted within its discretion to dismiss the amended complaint under the primary jurisdiction doctrine.

The record also supports the court's conclusion plaintiff failed to exhaust administrative remedies. Pursuant to N.J.A.C. 14:1-1.5(a), "[a]ll petitions that

17

seek to start a formal proceeding before the Board shall conform to N.J.A.C. 14:1-4 and 5." In addition, N.J.A.C. 14:1-1.5(b) states, "[a] formal complaint requesting a formal hearing shall consist of a petition to the Board that meets the applicable requirements of N.J.A.C. 14:1-4 and 5, accompanied by the appropriate fee . . . ."

On the other hand, "[a]n informal complaint or filing, requesting Board action without a formal Board proceeding may be made by letter, telephone call, e-mail, fax or other writing, in accordance with N.J.A.C. 14:1-5.13." N.J.A.C. 14:1-1.5(c). An informal complaint will be assigned to an operating division of the Board, or to its division of consumer assistance to facilitate amicable adjustment of the dispute. N.J.A.C. 14:1-5.13(d) to (e). "Informal complaints shall be without prejudice to the right of any party to file a petition or of the Board to institute a formal proceeding." N.J.A.C. 14:1-5.13(g). "While informal complaints are recommended wherever practicable as a method designed for amicable adjustment of disputes, no mandatory or prohibitory order will be issued on an informal complaint." N.J.A.C. 14:1-5.13(h). Importantly, "[a] party desiring a decision or order of the Board must file a petition in accordance with N.J.A.C. 14:1-4, 5, and 6." N.J.A.C. 14:1-5.13(i).

A-3569-23

Plaintiff argues he exhausted his administrative remedies and further attempts at seeking relief from the BPU would be futile, see Riggs v. Twp. of Long Beach, 101 N.J. 515, 526 (1986) (dismissal for failure to exhaust administrative remedies is not warranted where pursuing administrative remedies would be futile). In support of his argument, plaintiff submitted a document that appears to be a printout from the website of the BPU's customer service division. The document was not authenticated and contains hearsay. On those bases alone, it is insufficient to establish either futility or exhaustion of administrative remedies.

However, even if the document is considered credible and its hearsay statements accepted as accurate, it purports to establish: (1) plaintiff made a "verbal" complaint to the BPU alleging defendant's demand to enter his residence to restore gas service was "neither necessary, required or permitted under law[;]" (2) a BPU employee told another BPU employee "both claims and safety issue are beyond BPU jurisdiction[;]" (3) a BPU employee closed the complaint because "[plaintiff] will be filing formal [(sic)] because he thinks it is the only way to get case rejected and have proof that he was told he had to file Formal Hearing [(sic)]."

The document, at best, establishes plaintiff pursued the informal complaint process at BPU, was advised he must file a formal petition to obtain a final agency decision from the BPU, and stated he would file a formal petition requesting a hearing. Plaintiff, however, produced no evidence he filed a formal petition with the agency or obtained a final decision with respect to whether defendant's tariff and the BPU's regulations authorize defendant to enter his home for safety purposes when restoring gas service. As noted, the formal complaint process is the only avenue through which to obtain a final agency decision from the Board. N.J.A.C. 14:1-5.13(i).

Plaintiff submitted the printout of the website in support of his motion for reconsideration of the April 1, 2024 order. Given our analysis, we see no basis on which to conclude the motion court abused its discretion when it denied reconsideration. See Lee v. Brown, 232 N.J. 114, 126 (2018) ("A motion for reconsideration . . . is a matter left to the trial court's sound discretion.") (alteration in original) (quoting Guido v. Duane Morris LLP, 202 N.J. 79, 87 (2010)). A party may move for reconsideration of a court's decision pursuant to Rule 4:49-2, on the grounds (1) the court based its decision on "a palpably incorrect or irrational basis," (2) the court either failed to consider or "appreciate the significance of probative, competent evidence," or (3) the moving party is

presenting "new or additional information . . . which it could not have provided on the first application." Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401-02 (Ch. Div. 1990)). A motion for reconsideration is not an opportunity to "expand the record and reargue a motion. . . . [It] is designed to seek review of an order based on the evidence before the court on the initial motion, . . . not to serve as a vehicle to introduce new evidence in order to cure an inadequacy in the motion record." Capital Fin. Co. of Del. Valley v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008).

We part company only with the motion court's dismissal of the amended complaint with prejudice. In the amended complaint, plaintiff alleged various tort and breach of contract claims. Each claim was predicated on his argument defendant's tariff and BPU's regulations do not authorize defendant to demand access to his residence to restore gas service. It was within the motion court's discretion to dismiss the amended complaint because the agency was the appropriate body to determine the validity of the fundamental premise of plaintiff's claims. However, in the event plaintiff prevails before the BPU, or on appeal from its final agency decision, he should have the opportunity to

A-3569-23

renew the amended complaint to pursue his related tort and breach of contract claims.

We, therefore, remand the matter for entry of an order dismissing the amended complaint without prejudice to refiling after plaintiff exhausts his administrative remedies before the BPU, including available judicial review. We offer no opinion with respect to the outcome of any formal petition plaintiff may file with the BPU or as to the validity of the tort and breach of contract claims alleged in the amended complaint.

To the extent we have not specifically addressed any of plaintiff's remaining contentions, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part and remanded in part for entry of an order consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division